**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

Orlando Garcia,

           Plaintiff,

           v.

Guadalupe Alcocer et al.,

           Defendants.

Case No. 2:20-cv-08419-VAP-(JEMx)

**FINDINGS OF FACT AND
CONCLUSIONS OF LAW**

## I.     INTRODUCTION

Plaintiff Orlando Garcia ("Garcia"), who requires a wheelchair for mobility, filed this action against Defendants Digital Currency Services, Inc. ("DCS") and Guadalupe Alcocer ("Alcocer") (collectively, "Defendants") alleging violations under the Americans with Disabilities Act ("ADA") and the California Unruh Civil Rights Act on September 15, 2020.  (Doc. No. 1.) Garcia alleges that DCS's check cashing store failed to maintain a lowered transaction counter.  (*Id.*)  The Court declined to exercise supplemental jurisdiction over Garcia's California Unruh Civil Rights Act claim on September 18, 2020.  (Doc. No. 12.)  Garcia now seeks injunctive relief only under the ADA.  (Doc. No. 1.)

The Court held a one-day bench trial in this case on November 16, 2022.  (Doc. No. 71).  The parties submitted documentary evidence and elicited testimony from Garcia.  (*Id.*)

Having reviewed and considered the evidence, argument of counsel, the credibility of the witness, and written submissions, the Court issues the following findings of fact and conclusions of law under the Federal Rule of Civil Procedure 52(a).  To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such, and vice versa.

## II.    FINDINGS OF FACT

1.    Garcia has Cerebral Palsy and is disabled within the meaning of ADA.

2.    Garcia lives in Huntington Park, Los Angeles County, California.

3.    DCS operates 3rd & Normandie Check Cashing located at 280 S. Normandie Ave., Los Angeles, California ("3rd & Normandie Check Cashing").

4.    3rd & Normandie Check Cashing is open to the public and is a business establishment with service counters.

5.    In August 2020, Los Angeles County California reported over 62,000 COVID-19 cases and over 1,000 deaths.  *See* https://data.chhs.ca.gov/dataset/covid-19-time-series-metrics-by-county-and-state.  State and local orders at various times during 2020 required residents to stay home, prohibited travel, closed businesses, and suspended in-person schooling.  *See, e.g.*, California Executive Order N-33-20 (Mar. 19, 2020); Safer at Home, Public Order Under City of Los Angeles Emergency Authority (Mar. 19, 2020); California Regional Stay at Home Order 12/03/2020 (Dec. 3, 2020); Blueprint for a Safer Economy,

United States District Court
Central District of California

2

https://covid19.ca.gov/safer-economy/.  At the height of the pandemic, ICU availability in the Central District of California dropped to 0.0%.  Chief Judge Order 21-002, at 1.

6.   Garcia visited 3rd & Normandie Check Cashing, located 10.5 miles from his residence, on August 18, 2020.  The journey took 60 to 90 minutes, and involved two changes on the Metro light rail system and a third journey on the bus.

7.   At 3rd & Normandie Check Cashing, Garcia found several service counters that measure approximately 42 inches high and found no visible services counters that measures 36-inches-high or less.

8.   3rd & Normandie Check Cashing does have a lowered transaction counter that measures less than 36 inches, and it is located in a hallway behind a security door next to the main transaction windows.

9.   3rd & Normandie Check Cashing installed signs stating the lowered transaction counter is behind the security door after this lawsuit was filed.

10.   Garcia has savings and checking accounts with Chase Bank.  A Chase branch is located .5 miles from his residence.

11.   Garcia does not pay bills with money orders or send money by Western Union or MoneyGram.

12.   Garcia has sued at least 14 check cashing stores in Los Angeles, CA.

13.   Since his initial visits, Garcia has not returned to 3rd & Normandie Check Cashing or any of the other check cashing stores he has sued.

3

14.     There is a check cashing store 1.5 miles from Garcia's residence that Garcia also sued.  He has not returned to that cashing store either.

### III.     CONCLUSIONS OF LAW

A plaintiff must have Article III standing to obtain relief under the ADA. *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (*en banc*).  To establish Article III standing, a plaintiff must have suffered an injury in fact that is both concrete and particularized as well as actual or imminent; there must be a causal connection between the injury and conduct complained of; and it must be likely, not speculative, that the injury can be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1137 (9th Cir. 2002).  Moreover, a plaintiff seeking injunctive relief under the ADA must show a real and immediate threat of repeated injury in the future.  *Chapman*, 631 F.3d at 946; *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court.").  Courts assess standing at the time of filing, and the plaintiff bears the burden of establishing standing.  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000); *Chapman*, 631 F.3d at 946.

"Demonstrating an intent to return to a noncompliant accommodation is but one way for an injured plaintiff to establish Article III standing to pursue injunctive relief."  *Chapman*, 631 F.3d at 949; *D'Lil v. Best Western*

*Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008).  Where the plaintiff is "indifferent to returning" or if their "alleged intent to return is not genuine," no imminent threat exists.  *Chapman*, 631 F.3d at 953.  "Courts often examine four factors to determine whether a plaintiff had an intent to return: (1) the proximity of the place of public accommodation to plaintiff's residence, (2) plaintiff's past patronage of defendant's business, (3) the definitiveness of plaintiff's plans to return, and (4) the plaintiff's frequency of travel near defendant."  *Antonio v. Vanareth Kim Yi*, No. 14-04323, 2015 WL 13603781, at *2 (C.D. Cal. Mar. 4, 2015) (collecting cases).

Here, the first factor—Garcia's proximity to 3rd & Normandie Check Cashing—is weak support of Garcia's intent to return.  Garcia lives 10.5 miles from 3rd & Normandie Check Cashing, and the journey takes approximately 90 minutes and requires two different changes of public transportation.  Furthermore, there are multiple check cashing stores closer to Garcia's residence, and the Court does not find credible Garcia's testimony that he will travel 10.5 miles "to visit a specific [check cashing] store he has not regularly patronized."  *Antonio*, 2015 WL 13603781, at *2; *see also Langer v. Badger Co., LLC*, No. 18-934, 2019 WL 2269951, at *3 (S.D. Cal. May 24, 2019) ("[The plaintiff]'s allegations regarding his intent to return are fairly thin.  He does not allege he has ever been to the tavern before or explain why he chose to go there as opposed to some other tavern or bar.") (citations omitted).

The second factor—past patronage—also does not support Garcia's intent to return.  Garcia admitted he never visited 3rd & Normandie Check

Cashing outside of August 18, 2020.  *See Moreno v. Northwest Dealerco Holdings, LLC,* No. 13-00375, 2014 WL 2888248, at *2-*3 (C.D. Cal. Aug. 6, 2014) (finding that plaintiff had "only visited the gas station on one occasion," and thus fails to show any intent to return to the gas station in question.).

As to the third factor, Garcia professed no definite plan to return. Although Garcia's past litigation history alone is not sufficient to impugn his credibility, the Court finds Garcia's prior suits undermine the genuineness of his stated intent to return to 3rd & Normandie Check Cashing.  *See D'Lil*, 538 F.3d at 1040.  Garcia sued at least 14 check cashing stores, some that are in closer proximity to his residence, and he testified he could not remember whether he returned to any of those stores or whether some of those cases were closed.  Garcia also sued over 200 businesses in Northern California, and the Court does not find Garcia's testimony credible that he has an intent to return to all those stores as well.  *See Vogel v. Sym Props., LLC*, No. 15-09855, 2017 WL 4586348, at *6 (C.D. Cal. Aug. 4, 2017) ("Plaintiff's litigation history, coupled with a contradictory factual record, raises serious credibility questions and calls into question Plaintiff's stated purpose for visiting the [store].").  Finally, that Garcia sued 78 stores in August 2020 alone, traveled on public transportation to each of those stores during the height of the COVID-19 pandemic, and could not recall the types of businesses he sued, also undermines his credibility.

Moreover, Garcia offered no reasons why he might visit 3rd & Normandie Check Cashing specifically in the future.  Garcia has savings

and checking accounts with a bank with a branch located within .5 miles of his residence and need not cash checks or pay bills using 3rd & Normandie Check Cashing's services.  *See Kristoffersen v. RVS110, LLC*, No. 18-0392, 2019 WL 1877183, at *3 (S.D. Cal. Apr. 26, 2019) ("[Plaintiff] offers no . . . reasons why she might visit San Diego in the future or why she would stay in Defendant's Motel," and "the evidence shows Plaintiff has visited San Diego only three times in her life, including the visit that led to her lawsuit"). He testified that the checks he cashes are checks he receives from his attorneys in this action, presumably in connection with the lawsuits he files.

The fourth factor—Garcia's frequency of travel near 3rd & Normandie Check Cashing—also is weak support for Garcia's intent to return.  Although Garcia testified that he visited the area to buy a collapsible hamper at a Dollar Store, Garcia's "nebulous statement provides no indication that his visits are regular, . . . or whether he has a reason for recurrent returns to [that] neighborhood."  *Antonio*, 2015 WL 13603781, at *2.  These statements thus undermine Garcia's credibility that he regularly visited the area near 3rd & Normandie Check Cashing.

Accordingly, the Court finds that Garcia's demeanor and memory during his testimony undermines the credibility of his intent to return.  The record also undermines Garcia's stated intent to return.  *See Harris v. Stonecrest Care Auto Ctr., LLC*, 472 F. Supp. 2d 1208, 1216 (C.D. Cal. 2007) ("[a]ll four factors, in varying degrees, weigh against finding Plaintiff has standing in this case"); *Molski v. Kahn Winery*, 405 F. Supp. 2d 1160,

1168-69 (C.D. Cal. 2005) ("all factors weigh heavily against finding standing in this case").

### IV.    CONCLUSION

For the reasons state above, the Court lacks jurisdiction to hear Garcia's ADA claim and thus his case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Dated:    12/1/21

Virginia A. Phillips
United States District Judge

United States District Court
Central District of California

8