UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Orlando Garcia,<br><br>    Plaintiff,<br><br>v.<br><br>Guadalupe Alcocer and Digital Currency Services, Inc.,<br><br>    Defendants. | Case No. 2:20-cv-08419-VAP-JEMx<br><br>**Order GRANTING Motion for Attorneys' Fees (Dkt. No. 79)** |

    Before the Court is Defendants Digital Currency Services, Inc. and Guadalupe Alcocer's ("Defendants") "Motion for an Award of Attorney Fees in Favor of Defendant Digital Currency Services, Inc. and Against Plaintiff Orlando Garcia in the Amount of $40,200.00" ("Motion), filed on December 15, 2021. (See Dkt. No. 79.) After considering all the papers filed in support of, and in opposition to, the Motion, the Court finds this matter appropriate for resolution without oral argument pursuant to Local Rule 7-15, VACATES the hearing on January 24, 2022 at 2:00 p.m., and GRANTS the Motion for the following reasons.

## I. BACKGROUND

    On September 15, 2020, Plaintiff Orlando Garcia ("Plaintiff") commenced this action against Defendants alleging violations under the

Americans with Disabilities Act ("ADA") and the California Unruh Civil Rights Act on September 15, 2020.  Plaintiff alleged Defendants' check-cashing store failed to maintain a lowered transaction counter.  The Court declined to exercise supplemental jurisdiction over Plaintiff's California Unruh Civil Rights Act claim on September 18, 2020.

On July 9, 2021, the Court denied Defendants' motion to dismiss this action on standing grounds.  The Court concluded Plaintiff sufficiently had alleged standing on the basis of deterrence, as well as standing as an ADA tester, because he alleged a genuine intent to return to Defendants' check-cashing location.

The Court held a one-day bench trial on Plaintiff's remaining ADA claim on November 16, 2021, during which the parties submitted documentary evidence and elicited testimony from Plaintiff.

Following the trial, the Court issued Findings of Fact and Conclusions of Law on December 1, 2021.  The Court found Plaintiff lacked Article III standing to pursue his ADA claim because, despite having alleged tester standing and deterrence as a result of the non-ADA-compliant counter he experienced at Defendants' check-cashing location, Plaintiff did not prove at trial that he had a credible, genuine intent to return to the check-cashing location.  The Court dismissed the action with prejudice and entered Judgment.

Defendants filed the instant Motion on December 15, 2021.  Plaintiff filed Opposition to the Motion on January 3, 2022.  Defendants filed a Reply to the Opposition on January 5, 2022.

## II. LEGAL STANDARD

The ADA provides that "the court in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses and costs." 42 U.S.C. § 12205. When the prevailing party is the defendant, attorneys' fees should be awarded only if "the plaintiff's action was frivolous, unreasonable, or without foundation." Brown v. Lucky Stores, 246 F.3d 1182, 1190 (9th Cir. 2001). The purpose of awarding fees to a prevailing defendant is "'to deter the bringing of lawsuits without foundation.'" CRST Van Expedited, Inc. v. E.E.O.C., 578 U.S. 419, 432 (2016) (quoting Christiansburg Garment Co. v. E.E.O.C., 434 U.S. 412, 420 (1978)).

## III. DISCUSSION

In the Motion, Defendants ask the Court to award them their attorneys' fees as the prevailing party under 42 U.S.C. § 12205. According to Defendants, the Court has jurisdiction to award them their fees and such fees should be awarded because Plaintiff's ADA claim was frivolous, unreasonable, and groundless. (See Mot.) Defendants present their attorney's billing records and ask that his hourly rate of $500 and the total number of hours he expended on this litigation be deemed reasonable. In total, Defendants seek $40,200 in attorneys' fees.

In Opposition, Plaintiff asks the Court to deny the Motion because he claims this case was based on "colorable arguments of law" and he relied on binding Ninth Circuit authority to support his belief that he had standing to bring his ADA claim. (See Opp'n.) He also contends the Court should not award fees against Plaintiff simply because the Court disagrees with

3

Plaintiff's litigation tactics as a serial ADA Plaintiff. Finally, Plaintiff does not contest that the billing rate or number of hours expended by defense counsel are reasonable, but he "does take issue with the amount of time billed for the present motion." (Id. at 3.)

The Court first addresses whether Defendants are entitled to an award of attorneys' fees as the prevailing party, then will discuss whether Plaintiff's lawsuit was frivolous, unreasonable, or groundless, and the reasonableness of the fees requested.[1]

### A.  Whether Defendants are the Prevailing Party

As acknowledged by Defendants, there is some authority in the Ninth Circuit to suggest when an action has been dismissed for lack of standing and, thus, lack of subject matter jurisdiction, the Court thereafter lacks authority to award attorneys' fees. See, e.g., Skaff v. Meridien N. Am. Beverly Hills, LLC, 506 F.3d 832, 837 (9th Cir. 2007) ("We must follow the

---

[1] In Opposition, Plaintiff argues vigorously against the Court's conclusion that he lacked standing in this case. The Court will not revisit the issue here, especially because Plaintiff has not filed a motion for reconsideration of the Court's previous ruling. The Court points out, however, even ADA testers must demonstrate they have suffered an injury in fact and they are likely to be wronged in a similar way by an immediate threat of repeated injury. See Chapman v. Pier 1 Imports (US) Inc., 631 F.3d 939, 946, 948 (9th Cir. 2011). To do so, Plaintiff must have also shown either that he intended to return to Defendants' check-cashing location or that he was deterred by the non-ADA-compliant counter and would return to that check-cashing location but for that barrier. Id. at 950; Feezor v. Sears, Roebuck & Co., 608 F. App'x 476, 477 (9th Cir. 2015); Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1040 (9th Cir. 2008). As discussed at length in the Court's Findings of Fact and Conclusions of Law, the Court did not find Plaintiff's so-called intent to return credible for several reasons. As such, he failed to prove this essential element to demonstrate he had standing to pursue his ADA claim for injunctive relief.

rule that if a plaintiff does not allege standing in its complaint, we have no jurisdiction to hear the case. A court that lacks jurisdiction at the outset of a case lacks the authority to award attorneys' fees."); Oliver v. In-N-Out Burgers, 945 F. Supp. 2d 1126, 1131 (S.D. Cal. 2013) ("A court that dismisses an action for lack of jurisdiction due to standing does not have authority to award attorney's fees."); Lopez v. Coombe Hesperia Road, LLC, No. EDCV 20-52-JGB (SHKx), 2020 WL 8413518, *2 (C.D. Cal. Dec. 11, 2020) ("because the Court found that it does not have subject matter jurisdiction over Plaintiff's ADA claims . . . the Court lacks the authority to award attorneys' fees.").

The United States Supreme Court, however, has held that "a favorable ruling on the merits is not a necessary predicate to find that a defendant has prevailed" under a statutory attorneys' fees provision. See CRST Van Expedited Inc., 578 U.S. at 421. Applying that precedent, the Ninth Circuit in turn has held that a defendant may be considered a prevailing party even if a case has been dismissed for lack of subject matter jurisdiction. See Amphastar Pharm. Inc. v. Aventis Pharma SA, 856 F.3d 696, 709 (9th Cir. 2017). Accordingly, the Court concludes it has jurisdiction to award the fees requested here. See id. at 710 ("[t]o rule that a district court cannot award attorneys' fees even when it determines that a [plaintiff] brought a frivolous suit just because the jurisdictional bar applies would undermine one of the key purposes . . . to discourage 'parasitic' suits."); see also Strojnik v. 1017 Coronado, Inc., No. 19-cv-02210-BAS-MSB, 2021 WL 120899, at *4-5 (S.D. Cal. Jan. 13, 2021) (awarding attorneys' fees to a prevailing defendant under an ADA claim after dismissing complaint with prejudice); Vogel v. Sym Properties LLC, No. CV 15-09855-AB (ASX), 2017

WL 4586348, at *2 (C.D. Cal. Aug 4, 2017) ("Given the trend of abusive ADA litigation, special diligence and vigilant examination of the standing requirement are necessary and appropriate to ensure the litigation serves the purposes for which the ADA was enacted.").

The Court next considers whether Defendants are the prevailing party. To make such a determination, the Court must consider if a material change in the legal relationship between the parties has occurred as a result of the Court's dismissal of Plaintiff's lawsuit on the basis of lack of standing, which revealed the Court lacked subject matter jurisdiction. See Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res., 532 U.S. 598, 604-605 (2001). The Ninth Circuit has made clear that dismissing a case for lack of subject matter jurisdiction is "a significant victory and permanently changes the legal relationship of the parties." Amphastar Pharm. Inc., 856 F.3d at 709. Accordingly, Defendants are the prevailing party here. Id.; see also Rutherford v. Evans Hotels, LLC, No. 18-cv-435 JLS (MSB), 2021 WL 1945729, at *2-3 (S.D. Cal. May 14, 2021) (concluding the defendant who obtained a dismissal for lack of standing and subject matter jurisdiction was the prevailing party); Strojnik v. Portola Hotel, LLC, No. 19-cv-07579-VKD, 2021 WL 4172921, at *2 (N.D. Cal. Sept. 14, 2021) (same, collecting cases).

**B.     Whether this Action was Frivolous, Unreasonable, or Groundless**

Next, the Court must consider whether Plaintiff "had no reasonable foundation on which to bring the suit" and whether he "knew or should have known that the Court would not have jurisdiction." See Amphastar Pharm. Inc., 856 F.3d at 710 (finding the plaintiff's claim to be frivolous because the

plaintiff "had no reasonable foundation on which to bring the suit" and "knew or should have known that the Court would not have jurisdiction"). This standard is also met if "the plaintiff continued to litigate after" his claim "clearly became" groundless or without foundation. Hughes v. Rowe, 449 U.S. 5, 15 (1980). While bad faith in bringing the lawsuit is not required, a showing of bad faith could support a finding that the lawsuit was "frivolous, unreasonable or groundless." Advocs. for Individuals with Disabilities, LLC v. MidFirst Bank, No. CV-16-01969-PHX-NVW, 2018 WL 3545291, at *11 (D. Ariz. July 24, 2018).

Here, as discussed supra, the Court determined Plaintiff failed to establish standing for his ADA claim. Dismissal for lack of standing does not by itself make a claim frivolous or unreasonable. See Amphastar Pharms. Inc. v. Aventis Pharma SA, No. EDCV-09-0023 MJG, 2017 WL 10543563, at *8 (C.D. Cal. Nov. 20, 2017) ("The Court is mindful that it must 'resist the understandable temptation to engage in post hoc reasoning by concluding that, because plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" (quoting Christiansburg, 434 U.S. at 421-22)). The Court, however, may also take into consideration Plaintiff's litigation history, for example, to make a determination as to whether he had a reasonable foundation to bring the suit or has in some other way acted unreasonably or in bad faith. Id. ("The Court does not find Amphastar's claim frivolous because it did not prevail, but rather because, as the facts became known to the Court, it became clear that Amphastar had no reasonable foundation on which to bring the suit."); see also Strojnik, 2021 WL 120899 at *4 (considering the plaintiff's extensive litigation history and use of misrepresentations and other tactics in previous settlements and the

1  current litigation in determining whether to award attorneys' fees to the
2  defendant).

3        The Court considers Plaintiffs' litigation history to determine whether
4  this action was frivolous or unreasonable.  The Court concludes that it is.

5        Plaintiff has filed hundreds of ADA cases in the Central District of
6  California.  Many of those cases have resulted in settlements but some
7  have been dismissed for lack of standing.  For example, recently two of
8  Plaintiff's ADA lawsuits, identical to this one, were dismissed for lack of
9  standing within the Central District of California, months before the trial in
10 this matter took place.  The Honorable Stephen V. Wilson of this Court
11 dismissed Plaintiff's ADA claim for lack of standing on April 21, 2021.  <u>See</u>
12 <u>Garcia v. 1971 Fateh, LLC</u>, No. 2:20-cv-7661-SVW-ASx, Dkt. No. 33 (C.D.
13 Cal. Apr. 21, 2021).  Likewise, the Honorable Dale S. Fischer also of this
14 Court dismissed Plaintiff's ADA claim for lack of standing on July 12, 2021.
15 <u>See</u> <u>Garcia v. Digital Currency Servs., Inc.</u>, No. 2:20-cv-8986-DSF, Dkt. No.
16 29 (C.D. Cal. July 12, 2021).  Both of these lawsuits were dismissed with
17 reasoned opinions that detailed the ADA standing requirement and
18 discussed at length how Plaintiff had failed to meet that requirement.  These
19 orders of dismissal provided Plaintiff with notice that the same issue would
20 arise in this case and its negative determination would be fatal to his ADA
21 claim here, yet he continued to pursue this action.

22       Moreover, the evidence Plaintiff presented at trial in support of his
23 claimed standing to pursue his ADA claim was not credible.  To wit, Plaintiff
24 admitted that he had sued at least 14 check-cashing stores in Los Angeles
25 and has not returned to any of those locations; he visited Defendants' store
26 on August 18, 2020 for the first time and has not returned.  He also admitted

he has a checking and savings account at a bank, he does not pay bills with money orders or send money by Western Union or MoneyGram, and there are multiple check-cashing stores located closer to his residence than Defendants' check-cashing location, which is 10.5 miles away from his residence and took him over an hour using public transportation to reach. The evidence presented here was similar to that presented in the actions pending before Judge Wilson and Judge Fischer and which those Judges found failed to satisfy the standing requirement to pursue an ADA claim for injunctive relief. In other words, Plaintiff knew or should have known the evidence he intended to present in this case as to his purported standing would be found insufficient.

Plaintiff's litigation history shows he was aware of the standing requirements for ADA claims and on multiple occasions has failed to satisfy those requirements. This conduct, taken together with his lack of credibility in this case, strongly weigh in favor of finding the present action both frivolous and unreasonable. See Strojnik, 2021 WL 120899 at *4 ("The fact remains that Mr. Strojnik files lawsuits with broad, non-specific allegations that he knows will be dismissed for lack of standing."). Plaintiff did not have a reasonable basis to allege an injury-in-fact that would support Article III standing. Plaintiff knew or should have known that he lacked standing in this case. This action raised no standing issues that had not already been resolved unambiguously by prior decisions within the Ninth Circuit and the Central District of California. The Court finds Plaintiff's bases for filing this lawsuit were frivolous, unreasonable, and groundless. Accordingly, the Court concludes an award of attorneys' fees in favor of Defendants is justified here.

### C. Amount of Attorneys' Fees

Defendants seek $40,200.00 in attorneys' fees, consisting of 80.4 hours of work defending this action at a rate of $500 per hour.

Courts use a two-step lodestar approach to calculate attorneys' fees. Welch v. Metro. Life Ins. Co., 480 F.3d 942, 945 (9th Cir. 2007). The first step is to calculate a "lodestar" by "multiplying the number of hours [the Court] finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate." McGrath v. Cnty. of Nev., 67 F.3d 248, 252 (9th Cir. 1995) (citation omitted). "In determining the appropriate lodestar amount, the district court may exclude from the fee request any hours that are excessive, redundant, or otherwise unnecessary." Welch, 480 F.3d at 946 (internal quotations omitted).

"The [fee] applicant has an initial burden of production, under which it must 'produce satisfactory evidence' establishing the reasonableness of the requested fee." United States v. $28,000 in U.S. Currency, 802 F.3d 1100, 1105 (9th Cir. 2015). "This evidence must include proof of market rates in the relevant community (often in the form of affidavits from practitioners) . . . and detailed documentation of the hours worked." Id. (citations omitted).

The second step is to determine whether the lodestar amount is reasonable or needs to be augmented. Id. The Ninth Circuit has adopted the following factors to determine whether the fees requested by the prevailing party are reasonable: time and labor required; the novelty and difficulty of the questions involved; the skill needed to perform the legal service properly; the preclusion of other employment by the attorney due to acceptance of the case; the customary fee, whether the fee is fixed or contingent; time limitations imposed by the client or the circumstances; the

amount involved and the results obtained; the experience, reputation, and ability of the attorney; the "undesirability" of the case; the nature and length of the professional relationship with the client; and awards in similar cases. Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992). Many of the Kerr factors are subsumed within the lodestar calculation. See Jordan v. Multnomah Cnty., 815 F.2d 1258, 1262 (9th Cir. 1987).

While the court must consider the Kerr factors, it need not discuss all of them "because most are not matters on which anything is at issue or needs to be said." McGinnis v. Ky. Fried Chicken of Cal., 51 F.3d 805, 809 (9th Cir. 1994). Typically, the reasonableness determination "will involve considering both the proponent's evidence and evidence submitted by the fee opponent 'challenging the accuracy and reasonableness of the facts asserted by the prevailing party.'" $28,000 in U.S. Currency, 802 F.3d at 1105 (quoting Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 980 (9th Cir. 2008)). There is a strong presumption, however, that the lodestar figure represents a reasonable fee. See Jordan, 815 F.2d at 1262 (citing Pa. v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)).

### 1. Reasonable Hourly Rate

The Ninth Circuit has explained "determining a reasonable or prevailing rate of compensation is inherently difficult." Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986) reh'g denied, amended on other grounds, 808 F.2d 1373 (9th Cir. 1987) (internal quotation marks and citation omitted). "[T]he established standard when determining a

reasonable hourly rate is the 'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'" Camacho, 523 F.3d at 979 (quoting Barjon v. Dalton, 132 F.3d 496, 502 (9th Cir. 1997)).

"[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Camacho, 523 F.3d at 980 (quoting Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984)). "Generally, the relevant community is the forum in which the district court sits." Barjon, 132 F.3d at 500. In the event that the moving party fails to provide affidavits from local attorneys or from a fee expert to show that the requested rates match the prevailing market rates, the district court may rely on its own knowledge of customary rates and its familiarity with the legal market. See Ingram v. Oroudijian, 647 F.3d 925, 928 (9th Cir. 2011).

Here, instead of submitting affidavits from local attorneys or from a fee expert, defense counsel cites to fee awards other attorneys have obtained in ADA cases filed in the Central District of California and a fee award he obtained from a Judge on the Los Angeles Superior Court to establish the reasonableness of his requested hourly rate. The Court concludes this evidence establishes defense counsel's requested rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Camacho, 523 F.3d at 980. Even in relying on its own knowledge of the customary rates within the legal market of the Central District of California, the Court

concludes defense counsel's requested hourly rate is reasonable. Ingram, 647 F.3d at 928.

Defense counsel obtained his license to practice law in California in December 1980 and has practiced law continuously since then. (Link Decl. ¶ 2.) He has defended disability access cases for more than eighteen years. (Id. ¶ 5.) Given counsel's extensive litigation experience over the course of forty years, with nearly twenty years of specialized work on ADA cases, the Court concludes his hourly rate of $500 is reasonable and consistent with customary rates in the legal market of the Central District of California. The Court also notes Plaintiff does not object to the reasonableness of defense counsel's requested hourly rate.

### 2. Hours Reasonably Expended

In determining the reasonableness of the number of hours expended, the Court must examine detailed time records to determine whether the hours claimed are adequately documented and whether any of them are unnecessary, duplicative, or excessive. See Chalmers, 796 F.2d at 1210 (citing Hensley v. Eckerhart, 461 U.S. 424, 433-34 (1983)). The trial court, due to its familiarity with the case, is in the best position to evaluate the reasonableness of the hours requested. Moreno v. City of Sacramento, 534 F.3d 1106, 1116 (9th Cir. 2008).

Here, defense counsel has submitted his billing records for the time he expended in defense of this action from February 8, 2021 through December 14, 2021, including 3 hours of anticipated time to prepare the Reply. While the billing records detail his work, they containblock billing entries; i.e., counsel lists every task he accomplished each day, but fails to

identify how much time he spent on each individual task and instead provides the total time he spent defending the action on a daily basis. Such a presentation complicates the Court's ability to review whether the time expended on each litigation task was reasonable. See Welch, 480 F.3d at 948 (explaining block billing presents difficulty in determining reasonableness of the time expended on litigation tasks). Accordingly, the Court will impose a reduction of 10% for each billing entry containing block billing. The Court calculates 39.5 hours of the billed time falls victim to the block billing issue, meaning the Court will reduce that time by 3.95 hours.

The Court will also reduce the request for an award of time spent on routine administrative tasks. For example, defense counsel billed on February 8, 2021 for his preparation of a certificate of interested parties, on February 12, 2021 for his review of a "conference order," and on May 11, 2021 for his review of the Court's scheduling order. The billing entries on these dates reflect block billing and contain other tasks as well, so in the interest of fairness the Court will reduce the time for these tasks by .5 hours total.

Next, although Plaintiff does not take issue overall with the number of hours defense counsel spent defending his clients in this case, Plaintiff does take issue with the number of hours counsel spent preparing the instant Motion. The Court has considered the matter and agrees the 9.4 hours defense counsel expended to prepare the Motion and the Reply are excessive, considering the papers are similar to those counsel has filed at least in the case assigned to Judge Wilson, discussed supra, and are not particularly lengthy or thorough. The Court will reduce the time for these tasks by 2.4 hours.

Having reviewed every billing entry submitted, other than the foregoing reductions, the Court finds the time expended by counsel to have been reasonable. The vast majority of counsel's time was spent on tasks related to preparing for and attending the trial in this matter, then preparing the instant Motion. Counsel did not spend time on extraneous or unnecessary tasks, save those identified above, and did not pursue much if any discovery. Instead he appears to have focused on attempting to have this action dismissed, then settle the action at mediation, then prepare the case for trial. These tasks are legitimate and the time spent on each was reasonable, with the caveats noted above. Accordingly, the Court finds reasonable 73.55 hours of time defense counsel spent defending his clients against this action.[2]

### 3.    Final Lodestar Amount

Multiplying the reasonable hourly rate of $500 by the number of reasonable hours expended defending this case (73.55), the Court awards Defendants a total of $36,775 in reasonable attorneys' fees.

Defendants do not seek a fee multiplier and the Court sees no reason to depart from the lodestar amount. See Intel Corp. v. Terabyte Int'l Inc., 6 F.3d 614, 622 (9th Cir. 1993). ("In appropriate cases, the district court may adjust the 'presumptively reasonable' lodestar figure based on the factors listed in Kerr.") A fee multiplier is not appropriate here, as the facts and circumstances of this case do not justify such an enhancement.

---

[2] The Court also notes, as with the hourly billing rate, Plaintiff does not oppose or object to the number of hours defense counsel expended defending this case, except as to the time spent preparing the instant Motion, discussed supra.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Attorneys' Fees and awards Defendants $36,775 in reasonable attorneys' fees, to be paid by Plaintiff.

**IT IS SO ORDERED.**

Dated: 1/19/22

Virginia A. Phillips
United States District Judge